IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

| | |
|---|---|
| SOUTHWEST REINSURE, INC., a corporation, and SOUTHWEST ADMINISTRATIVE SERVICES, INCORPORATED, a corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. CIV 08-_____ ) |
| CENTURY AUTOMOTIVE SERVICE CORPORATION, a corporation, | ) ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY RELIEF**

Southwest Administrative Services, Incorporated ("SAS") and Southwest Reinsure, Inc. ("SWRe") Plaintiffs, through their attorneys, file this complaint against Defendant and state as follows:

**PARTIES**

1. SAS is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico.

2. SWRe is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico.

3. Defendant Century Automotive Service Corporation ("Century") is a California corporation with its principal place of business in California. Century maintains an office within the Albuquerque Division of the District of New Mexico at 7005 Prospect Place, NE, Albuquerque, New Mexico 87110.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to Title 28 U.S.C. §1332. There is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Defendant is subject to the personal jurisdiction and process of this Court. Accordingly, pursuant to Title 28 U.S.C. §1391(a), venue is proper in this Court.

**FACTS**

6. Each of SAS and SWRe is in the business of acting as third party administrator (a "TPA") with respect to, among other products, motor vehicle service contract ("VSC") programs. VSC programs sold through automobile dealers provide protection against unanticipated repair or auto part replacement costs for consumers beyond or in addition to factory warranties. A TPA is the party that handles the day to day administration of a VSC program, including producing and distributing documents such as contracts and registration forms, accepting monthly remittances, processing customer claims, and, in cases where the parties responsible for performance under the VSCs are protected by reinsurance, setting up captive reinsurance companies for the automobile dealers that are marketing the VSCs. A TPA in the normal course of its business will pay fees and commissions on the VSC business and also remit funds to the automobile dealers' captive reinsurance companies, on business ceded to them by and on behalf of administrator obligor companies, explained in the next paragraph. Although they have no formal written agreement between them, both SAS and SWRe, being under common control, contributed at different times and in different ways to the work done for Century as described in the succeeding paragraphs; any recovery had herein will be

divided between the two Plaintiffs with no duplication of amounts claimed from Century. Accordingly, references to the two herein will for the most part be to SAS/SWRe as if they were one entity.

7. Century is in the business of acting as an administrator obligor (an "AO") with respect to VSCs written through automobile dealers. An AO is normally either an affiliate of, or a party under contract with, an automobile dealer, and typically performs at least two functions: (1) it is the party legally responsible for the performance of vehicle service contracts, in cases where the dealer itself is not the responsible party, and (2) it hires a TPA to administer the VSC as described in paragraph 5 above. In some states, VSCs are considered insurance products; in others, they are not. Notwithstanding the difference, it is common in the industry for the risks assumed by the administrator obligors under the VSCs to be treated as if they were insurance risks, and the parties to whom the AOs transfer all or a portion of these risks are normally referred to as reinsurance companies. The reinsurance companies are "captive," in the sense that they are formed for the account of and owned by one or more automobile dealers who write the VSCs that the reinsurance companies reinsure, and in the sense that the reinsurers have no other business besides that of the affiliated dealers.

8. In the year 2000, Century began acting as the administrator obligor of a block of VSCs that had originally been written and were being written through various automobile dealers (sometimes referred to herein as the "Producers") in the United States. SAS/SWRe was hired by Century as the TPA for these VSCs, meaning that, as stated above, it had the record-keeping, receipt and disbursement and documentation responsibility for these VSCs (the "Producer Business"). It is important to keep in mind

that a TPA is hired by an AO and everything the TPA does in the normal course of its business is on behalf of or for the account of the AO.  In the course of acting as TPA for the Producer Business, SAS/SWRe would receive from the Producers copies of executed VSCs that were supposed to be accompanied by funds representing the amounts paid by the consumers for the VSCs, less applicable commissions retained by the Producers. Often the funds tendered by the Producers with the VSCs were insufficient in amount, either intentionally, accidentally or as a result of mistakes in the applicable rate computation or commission percentage computation.   In setting up the appropriate accounts at the dealer's captive reinsurance company (described in the next paragraph) in respect of the VSCs received, SAS/SWRe would put up its own funds in place of the insufficient funds received from the producers.

9. Rather than attempting to collect the insufficiencies described in the preceding paragraph, SAS/SWRe would simply advance the correct amount of funds to the respective dealer's captive reinsurance company, called in the industry a Producer-Owned Reinsurance Company (a "PORC," or, collectively, the "PORCs"), and establish an account balance (in the name of the Producer in question) for the AO on that particular dealer's VSC business. In the cases of the amounts that are the subject of this Complaint, that AO was Century. On some occasions, SAS/SWRe advanced its own funds to pay claims under the VSCs when the PORC in question did not have funds on hand.  Just as in the case of the premium insufficiencies, rather than attempting to immediately collect the amounts advanced by SAS/SWRe to pay claims directly, SAS/SWRe would establish an account balance  for the AO (in the name of the Producer who owned the PORC for whose account the claims had been paid directly by SAS/SWRe).  By the same token,

there are some Producers to whom money is owed in respect of over-remittances. In the case of all the Producers at issue here, the AO was Century. By November 30, 2006, the total amount of the Producer account balances, net of those with credit balances, exceeded One Million, Nine Hundred Thousand Dollars ($1,900,000.00). Because of the continuing business relationship between Century and SAS/SWRe, however, no attempt was made to collect the account balances.

10. In the fall of 2006, Century indicated to SWRe that it wished to appoint a different TPA for the block of VSCs that has been identified herein as the Producer Business. As a part of the ensuing discussions, SAS/SWRe requested that it be reimbursed for the Producer Balances. Finally, in March, 2007, SAS/SWRe sent the demand letter attached hereto (without its original enclosures) as Exhibit A to Century. Century has not responded to the letter and has failed and refused to pay the Producer Balances, totaling (net of credit balances owed to some Producers) as of November 30, 2006, $1,911,712.50.

11. A present, active and actual controversy exists between the parties, including but not limited to, the following:

a. Whether the repayment of the advances of the insufficiencies in funds tendered to SAS/SWRe as TPA by the Producers when writing VSCs (the "Producer Balances," as aforesaid), net of the amounts owed to certain Producers with credit balances, is the responsibility of Century; and

b. Whether SAS/SWRe is entitled to charge interest on the Producer Balances and if so, at what rate;

c. Whether SAS/.SWRe is entitled to recover its attorneys fees in connection with

the collection of the Producer Balances and the filing of this Complaint.

12. All conditions precedent to the filing of this Complaint have occurred or have been waived.

13. Plaintiffs have been required to retain the undersigned attorneys and pay them a reasonable fee for their services, and are entitled to recover these fees and taxable costs pursuant to applicable law.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Southwest Administrative Services, Incorporated and Southwest Reinsure, Inc. now seek a declaratory judgment concerning Defendant Century Automotive Service Corporation's obligations as administrator obligor for the Producers as defined and described herein, including, *inter alia:*

A. That the Court has jurisdiction of the subject matter and parties hereto;

B. That Defendant is obligated to repay to Plaintiffs the amount of all advances by Plaintiffs of funds that should have been supplied by the Producers or their PORCs, net of any amounts due to Producers with credit balances as shown on Exhibit C;

C. That Plaintiffs are entitled to add, to the total amount of Producers Balances, interest from November 30, 2006 to the date of judgment, at the rate determined by the Court; and

D. That Plaintiff is entitled to recover its reasonable attorneys fees herein.

## JURY DEMAND

To the extent that any of the claims or issues are triable to a jury, a jury is hereby requested.

                Respectfully submitted by:

                */s/ Philip C. Gaddy*
                Philip C. Gaddy
                GADDY ♦ JARAMILLO
                2025 San Pedro NE
                Albuquerque, NM 87110
                (505) 254-9090
                (505) 254-9366 Fax

                Attorneys for Plaintiffs

Exhibit A

Demand Letter of March 29, 2007